UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ALPHABET INC. STOCKHOLDER DERIVATIVE LITIGATION | Case No. 19-cv-06880-RS <br><br> **ORDER GRANTING MOTION TO DISMISS** |

# I. INTRODUCTION

Shareholder plaintiffs bring this derivative action against the directors of nominal defendant Alphabet, Inc. ("Alphabet"). Plaintiffs contend that Alphabet, a Delaware corporation which owns YouTube through its subsidiary Google LLC ("Google"), violated the Children's Online Privacy Protection Act ("COPPA") with the tacit assent of the Alphabet board ("Board"). Alphabet now moves to dismiss the operative complaint, arguing plaintiffs fail to plead demand futility. For the reasons set forth herein, the motion is granted.

# II. BACKGROUND

### A. COPPA

Enacted in 1998 and enforced by the Federal Trade Commission ("FTC"), COPPA regulates the digital collection of children's personal information where no parental consent has been provided. *See generally* 15 U.S.C. §§ 6501-6506; *see also* 16 C.F.R. § 312 (implementing COPPA); 64 Fed. Reg. 59888-59915 (same). Relevant here, COPPA outlaws such collection when performed by either "any operator of a Web site or online service directed to children" under

thirteen, or "any operator that has actual knowledge that it is collecting or maintaining personal information from a child" under thirteen. § 16 C.F.R. 312.3. To determine whether a "website or online service" is "directed at children," the FTC considers a broad range of unweighted, non-exhaustive factors.[1] A site not designated child-directed is referred to as a "general audience site," and—under the "actual knowledge" standard—is not subject to COPPA unless its operator somehow learns that a given user is a child (*e.g.*, from birthdate information provided during an account creation process). *See* 64 Fed. Reg. 59889-92.

### B. YouTube

Over one billion internet users view or upload videos on YouTube every month. Anyone can watch YouTube; but to upload, a user must create a "channel" serving as a hub for his or her shared content. As of 2016, YouTube, while stating in its terms of service that the platform was not intended for children under thirteen, assigned each uploaded video a rating between "Y" (appropriate for all ages) and "X" (ages 18+). Certain videos rated as child-appropriate were automatically made available on the YouTube Kids mobile application, launched by YouTube in 2015.

### C. Underlying Events

#### 1. **The FTC Investigation**

The FTC opened a non-public investigation of YouTube's COPPA compliance in February 2016. In June 2016, it formally notified Alphabet of this investigation through a "Request for Information" letter, which probed YouTube's process for deciding whether or not a user channel is child-directed. Alphabet replied that no such process existed, and that it understood YouTube to be a general audience site not subject to COPPA. Significantly, in a COPPA rule amendment promulgated three years prior, the FTC had referred to YouTube as a "general audience site[]."

---

[1] *See* 64 Fed. Reg. 59912-13 ("[T]he Commission will consider [the website's] subject matter, . . . content, age of models, language or other characteristics[,] . . . as well as . . . advertising promoting or appearing on the website. The Commission will also consider . . . empirical evidence regarding audience composition; evidence regarding the intended audience; and whether a site uses animated characters and/or child-oriented activities and incentives.").

*See* 78 Fed. Reg. 3972, 3982 n.126 ("The Commission notes that this amendment would not apply to uploading photos or videos on general audience sites such as Facebook or YouTube[.]").

In May 2017, the FTC served Alphabet with a Civil Investigative Demand for specific data and documents relating to the investigation. Over the course of two responsive productions—one in June 2017, one in September 2017—Alphabet reiterated both its legal position and lack of channel-specific COPPA policies.

Between March 2018 and March 2019, Alphabet's outside counsel submitted four "white papers" to the FTC. With titles like "Addressing FTC Concerns in an Uncertain Legal Landscape" and "YouTube's Product Approach Satisfies COPPA and Meets Policy Objectives," the white papers advanced Alphabet's belief that COPPA did not apply to YouTube, and objected to the FTC's channel-specific concerns as unprecedented. Even so, the series also discussed operational changes YouTube was prepared to make regarding unsupervised child users.

In April 2018, a coalition of child advocacy groups lodged a joint complaint with the FTC alleging YouTube violated COPPA. A year and a half later, on September 4, 2019, the FTC and the New York Attorney General filed suit against Google and YouTube in federal court. The suit settled that same day, under terms including a $170 million civil penalty (the largest ever collected by the FTC). Although the settlement contained no admission of liability, the FTC Chairman remarked at a press conference that there was "no excuse for YouTube's violations of the law."

### 2. The Board's Involvement

The Board at issue consisted of seven outside directors[2] and three inside directors.[3] For purposes of this litigation, each Board member is covered by a provision in Alphabet's charter, authorized by Section 102(b)(7) of the Delaware General Corporation Law, shielding directors from breach-of-fiduciary-duty liability in all instances except "acts or omissions not in good faith

---

[2] John Hennessy, Robin Washington, Roger Ferguson, Alan Mulally, Ann Mather, L. John Doerr, and K. Ram Shriram.

[3] Sundar Pichai (Google's CEO since 2015), Larry Page (former CEO of Alphabet and Google), and Sergey Brin (former President of Alphabet and Google).

or which involve intentional misconduct or a knowing violation of the law." Generally speaking, Alphabet agrees with plaintiffs' assertion that the Board was, at all relevant times, acutely aware of the FTC investigation. *See, e.g.,* Motion, Dkt. 56 at 25 ("Plaintiffs' allegations demonstrate the Board was actively monitoring the status of the FTC investigation.") (emphasis omitted).

Throughout the FTC investigation, defendants Mather, Ferguson, and Mulally sat on the Board's Audit Committee. In that capacity, these three individuals were charged with overseeing Alphabet's risk profile and "provid[ing] regular reports to the full Board[.]" *See* Complaint, Dkt. 53 at 57 (excerpting the Audit Committee charter). Meeting minutes indicate the Audit Committee discussed the FTC investigation once in October 2016, and at least four times in 2017.

In September 2018, prompted by the child advocacy groups' complaint with the FTC, two members of Congress sent Pichai, Google's CEO, a letter seeking details around YouTube's data collection practices for young users. The letter suggested YouTube was "not . . . in compliance" with COPPA.

**D. Procedural History**

This controversy began as two overlapping lawsuits, which were consolidated in January 2020. In May 2020, plaintiff-intervenor Balraj Paul successfully moved for a 120-day stay to complete his then-ongoing inspection of Alphabet's books and records pursuant to Section 220 of the Delaware General Corporation Law. Seven months later, plaintiffs filed the operative complaint, alleging breach of fiduciary duty and unjust enrichment against all ten individual Board members and three additional Google-affiliated individuals. Plaintiffs concede they never demanded the Board prosecute these claims.

**III. LEGAL STANDARD**

A basic principal of corporate law is that a corporation is run by its management and the corporation itself has the right to make claims. *See Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008). Because a shareholder derivative suit is an extraordinary action that allows a shareholder to step into the shoes of a corporation and make claims on behalf of the corporation, Federal Rule of Civil Procedure 23.1 "establishes stringent conditions for bringing

such a suit." *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010). Specifically, Rule 23.1 requires a shareholder either to demand action from the corporation's directors before filing suit, or plead with factual particularity the reasons why a demand would have been futile. Fed. R. Civ. P. 23.1(b)(3).

## IV. DISCUSSION

Plaintiffs rest their theory of liability upon the Board's alleged knowledge of YouTube's definite COPPA violations and conscious disregard thereof. Delaware law[4] recognizes a challenge of this nature—targeting a board's oversight failure, rather than any discrete, affirmative business decision—as a *Caremark* action, governed by the *Rales* demand futility standard. *See Pettry v. Smith*, 2021 WL 2644475, at *1 (Del. Ch. June 28, 2021) (citing *In Re Caremark Inter'l Inc. Litig.*, 698 A.2d 959 (Del. Ch. 1996)); *id.* at *6 (citing *Rales v. Blasband*, 634 A.2d 927 (Del. 1993)).

To state a viable claim under *Caremark*, "a plaintiff must allege particularized facts that satisfy one of the necessary conditions for director oversight liability . . . : either (1) the directors utterly failed to implement any reporting or information system or controls; or (2) having implemented such a system or controls, the directors consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Pettry,* 2021 WL 2644475, at *7 (internal quotation marks and bracketing omitted). To satisfy *Rales*, a plaintiff must plead "particularized facts creating a reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand." *Rales*, 634 A.2d at 930.

Here, plaintiffs contend a majority of Board members could not have dispassionately entertained their claims[5] on account of both *Rales* prongs: disinterestedness and independence.

---

[4] Because Delaware is Alphabet's state of incorporation, its law controls "whether the shareholders have adequately alleged demand futility." *See La. Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1058 (9th Cir. 2016).

[5] The complaint's unjust enrichment claim is contingent upon its breach of fiduciary duty claim.

ORDER GRANTING MOTION TO DISMISS
CASE NO. 19-cv-06880-RS

5

Neither argument is persuasive.

### A. *Rales* Prong I: Disinterestedness

In the *Caremark* context, a director is "interested" if he or she "faces a 'substantial likelihood of liability' for [his or her] role in the alleged corporate wrongdoing." *See Pettry,* 2021 WL 2644475, at *6. Given the exculpatory force of the Alphabet charter's § 102(b)(7) clause for good-faith director misconduct, this means plaintiffs are required to show that, in committing their alleged breaches of fiduciary duty, a majority of the Board "acted with scienter[.]" *See Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008); *see also In re Paypal Holdings, Inc. Shareholder Derivative Litigation*, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018) ("Negligent or even reckless conduct is insufficient.").

Plaintiffs do not make this showing. Drawing upon Board and Audit Committee materials, as well as the Congressmembers' letter to Pichai, they insist various directors "were well aware YouTube was violating the law," and that "the Board's failure to remedy the[se] known violations of law excuses demand[.]" *See* Opp'n, Dkt. 63-2 at 16, 25. Yet as Google rightly counters, this logic begs the question. On its face, the complaint supports a narrative wherein Alphabet, with the Board's support and supervision, responded to the FTC investigation by steadfastly proclaiming COPPA's inapplicability to YouTube. Considering the FTC's 2013 characterization of YouTube as a "general audience" site,[6] this strategy seems, if not promising, at least plausible; but whatever its merit, it does not leave the impression of the Board closing its eyes to "known" COPPA violations. In other words, plaintiffs attempt to attach the legal significance of "known violations" to what were then—and, consistent with the non-admission of liability aspect of the settlement, still remain—known *accusations.*

Of the sixty-odd cases plaintiffs marshal, none authorizes this maneuver. *Rojas v. Ellison*,

---

Accordingly, this analysis does not treat the two claims separately.

[6] Plaintiffs' briefing omits mention of this statement.

ORDER GRANTING MOTION TO DISMISS
CASE NO. 19-cv-06880-RS

2019 WL 3408812 (Del. Ch. July 29, 2019), is illustrative. There, the court acknowledged that "a settlement of litigation or a warning from a regulatory authority—irrespective of any admission or finding of liability—may demonstrate that a corporation's directors knew or should have known that the corporation was violating the law." *Rojas,* 2019 WL 3408812, at *11. Core to the *Rojas* holding, though, is its subsequent acknowledgment: "But the obverse is also true—such actions do not necessarily demonstrate that a corporation's directors knew or should have known that the corporation was violating the law." *Id.; see also id.* at *13 (declining to infer *Caremark* liability from "the sheer amount of [a] settlement payment," and stressing the need for "strong factual allegations of *board knowledge of ongoing legal violations*") (emphasis in original). Thus, where a board's awareness of a regulatory investigation has been sufficiently pled, that serves as the beginning, not the end, of the "substantial likelihood of liability" inquiry. The operative question becomes: well, what else did the board know?

Here, answering that question forecloses the potential for bad faith needed to ascertain any "interested" Board members. To reiterate, plaintiffs' allegations all but direct the inference that the Board's knowledge of, and engagement with, the FTC investigation effectively distilled to keeping optimistically abreast of Alphabet's efforts to prove its innocence.[7] As a matter of Delaware law, this conduct does not generate a likelihood of personal director liability. In *Melbourne Municipal Firefighters' Trust Fund v. Jacobs,* 2016 WL 4076369 (Del. Ch. Aug. 1, 2016) ("*Melbourne*"), shareholder plaintiffs brought a derivative suit against Qualcomm after Korean, Chinese, and Japanese regulatory bodies found the company to have violated international antitrust laws. *See Melbourne,* 2016 WL 4076369, at *3-*5. Ultimately concluding plaintiffs failed to make out defendant-directors' "substantial likelihood of liability," the court reasoned:

---

[7] Plaintiffs' emphasis on YouTube's "all ages" to "18+" video rating system, along with the 2015 launch of YouTube Kids, does not disturb this premise. So far as the sincerity of the directors' conviction in Alphabet's legal stance is concerned, there is nothing suspect in the notion that the Board both (i) signed off on using identifiably child-friendly content from YouTube to create a dedicated child-directed site, and (ii) continued to see YouTube as a general audience site beyond the reach of COPPA.

> The Complaint . . . acknowledges that *the Board consistently expressed . . . its view that its business practices were not violative of international antitrust laws* and elected to address the relevant legal actions by focusing on educating industry participants and government officials as to why its practices were legal . . . . This case . . . is not one in which the company pled guilty to criminal charges . . . or was advised by its general counsel that its business plan included potentially illegal conduct . . . . Plaintiff, therefore, *fails to allege that the Board acted in bad faith where it concluded that Qualcomm's business practices were legal* . . . and publicly proclaimed the Company's innocence.

*Melbourne,* 2016 WL 4076369, at *12 (emphasis added); *see also Pettry,* 2021 WL 2644475, at *9 ("[T]he Board's rationale for waiting until April 2016 to acknowledge past wrongdoing . . . makes sense; the Company was embroiled in, and actively defending, litigation . . . throughout 2013-2016. While one might disagree with the approach, a reasonable factfinder could not conceivably find that it was the product of bad faith.").

Put simply, this reasoning applies with equal force to Alphabet. Whereas plaintiffs charge the Board with "manufactur[ing] a narrative of oblivion to skirt their fiduciary duties," *see* Dkt. 63-2 at 11, even the most charitable reading of the complaint points to something less sinister: an earnestly fought legal dispute. Because the Board's supervision of that process affords no basis to impute the fear of facing liability for a *Caremark* violation to any individual defendant, plaintiffs' *Rales* prong one argument is unavailing.

### B. *Rales* Prong II: Independence

In the alternative, plaintiffs briefly argue that a majority of the Board lacks independence. This argument is plainly defective. *Rales*'s second prong asks whether demand is futile with respect to a particular director due to his or her "not [being] independent of another *interested* fiduciary." *Pettry,* 2021 WL 2644475, at *6 (emphasis added) (citing *Rales,* 634 A.2d at 934, 936). Because plaintiffs fall short of establishing any director's interestedness, independence is beside the point. *See, e.g., In re Oracle Corp. Derivative Litigation*, 2011 WL 5444262, at *6 (N.D. Cal. Nov, 9, 2011) ("In the absence of a showing that one or more board members is disqualified as interested, there is no reason to evaluate whether any remaining board member would be so beholden to that person or persons as to be unable to exercise independent

judgment."). All told, plaintiffs therefore do not disqualify a single defendant director, let alone a majority of the Board, under the controlling *Rales* standard.

## V. CONCLUSION

Consistent with the foregoing, the complaint is dismissed in its entirety. Although it is far from clear how plaintiffs might cure the above-discussed pleading deficiencies, they are nevertheless granted leave to amend. Any amended complaint must be filed within 21 days of the issuance of this order.[8]

**IT IS SO ORDERED**.

Dated: July 30, 2021

RICHARD SEEBORG
Chief United States District Judge

---

[8] In light of the disposition of nominal defendant Alphabet's motion to dismiss under Federal Rule of Procedure 23.1, the individual defendants' concurrently filed motion to dismiss under Federal Rule of Procedure 12(b)(6) is denied without prejudice as moot. *See In re Polycom, Inc. Derivative Litigation,* 78 F.Supp.3d 1006, 1021 (N.D. Cal. 2015).